**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

**R. CASPER ADAMSON,**

**Plaintiff,**

**vs.** **CASE NO. 4:04CV389-MMP/AK**

**JAMES R. McDONOUGH,[1] et al,**

**Defendants.**

**_____________________________/**

## SECOND REPORT AND RECOMMENDATION

This cause was remanded to the undersigned for application of the correct legal standard to Plaintiff's First Amendment claim regarding his attempt to request prayer partners by mail, which the DOC denied as a solicitation of pen pals prohibited by Chapter 33-210.101(8). (Doc. 48). Although the Report and Recommendation (doc. 45) was rejected seemingly *in toto*, the undersigned will address only that point for remand set forth in the Order and stands by its previous recommendations as to the other claims.

---

[1] James R. McDonough succeeded James Crosby as Secretary of the Department of Corrections and is automatically substituted as Defendant pursuant to Rule 25(d), Federal Rules of Civil Procedure.

At issue are 13 letters mailed by Plaintiff to Baptist ministers requesting religious pen pals. Plaintiff contends that certain unnamed prison officials misinterpreted the regulation when they rejected these letters because this type of solicitation was not prohibited. He also complains that the regulation is unconstitutional in that it violates his right to exercise his religion, which is Southern Baptist.

The regulation specifically states:

> Inmates shall not use correspondence privileges to solicit or otherwise commercially advertise for money, goods or services. For the purpose of this rule this includes advertising for pen-pals; inmates are not prohibited from corresponding with pen pals, but shall not place ads soliciting pen pals. Chapter 33-210.101(9).

Plaintiff has not provided the Court with copies of the 13 letters. However, Plaintiff admitted in his complaint that the letters requested "religious pen pals," and admitted in his informal grievance that the "purpose of the letters was to request FREE pen pals." (Doc. 6, p. 7A, and Exhibit B). While Plaintiff is not entirely clear why his letters, which he admits were written for the purpose of soliciting pen pals, should not be prohibited by this regulation, it appears that he is arguing that religious pen pals should be excepted from the regulation, as well as the fact that the solicitation was not from a paid, *i.e.* commercial, enterprise. Obviously, from a reading of the grievance responses, the prison administration interpreted Plaintiff's letters to be solicitations of pen pals as prohibited by this regulation. Given the considerable deference federal courts give to prison officials in the administration of their daily operations, the undersigned declines to second guess this interpretation.[2] Contrary to Plaintiff's argument that he has an

---

[2] Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224, 235 (1974); Harris v. Thigpen, 941 F.2d 1495, 1505 n.19 (11th Cir. 1991).

*absolute* right to correspondence, it is well settled law that prison officials may make such reasonable regulations of the mail as necessary for security and other concerns. See Thornburgh v. Abbott, 490 U.S. 401, 407, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989).

In the previous Report and Recommendation, the undersigned applied the reasonableness test set forth in Turner v. Safley, 482 U.S. 78 (1987) to the regulation cited above and recommended that this claim be dismissed because it was a reasonable burden on Plaintiff's rights in relation to the security concerns at issue. However, the district judge remanded this claim to the undersigned for application of the test set forth in Procunier v. Martinez, 416 U.S. 396 (1974), governing outgoing mail.

> First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad.

Applying this test to an inmate's legal mail, the district court in Spradley v. Sistrunk, 1996 WL 467511 (M.D. Fla), added that "we take the terms 'necessary' or 'essential' to mean that there is no alternative means of protecting jail security that is reasonably available to prison officials. This is the least that should be required when a fundamental interest such as access to the courts is at stake." The district court then

weighed the interest in security against the fundamental interest at issue to find that in Spradley, the interest in opening mail clearly marked legal mail and addressed to government agencies was not "generally necessary" to security since the recipients of such mail would not likely further any illegal or inappropriate information contained therein and was outweighed by the important interests of access to the courts.

In the present case, the government interest at issue is security and the prevention of inmate fraud and harassment of the unwitting public that has resulted in money order scams and other criminal activities. See Rodriguez v. Ames, 224 F.Supp.2d 555 (W.D.N.Y. 2002) (prison regulation that prohibited the solicitation of pen pals was upheld because solicitation of pen pals could result in inmate fraud under Turner analysis); Wilkerson v. Marshall, 1993 WL 303716 (N.D. Cal. 1993) (prohibition on solicitation of pen pals will prevent harassment and additional work for prison officials in policing such correspondence and does not impede inmate's right to correspond); United States v. Ray, 828 F.2d 399 (7th Cir. 1987)(criminal prosecution of inmate money order scam achieved through solicitation of pen pals). The application of the regulation against pen pals to the letters at issue in the present case appears to be narrowly tailored to the security interest in that an inmate's solicitation for prayer partners from a variety of congregations seems a likely means for possible fraud. These congregations are separate, such that a scheme perpetrated against one "prayer partner" might not be realized by different partners in another church, and the very nature of the solicitation, which appears on the surface to be honest, benign, and sincere, could likely lull an unsuspecting person into believing they were participating in a religious practice which

appears safe, but which could easily turn into a solicitation for other activity that could result in fraud or criminal activity. Thus, the regulation furthers an important governmental interest.

Next, the question is whether the regulation restricts First Amendment freedoms more than is necessary to protect the government interest. First, the regulation is not overly broad and does not ban pen pals or prayer partners, it simply bans inmate *solicitation* of such correspondence. Thus, if Plaintiff sincerely wanted to correspond with outsiders for purposes of prayer he could easily ask a family member or other outside source to have persons write him or have a chaplain inside the institution arrange for such correspondence. This would be within the parameters of the regulation and accomplish the religious exercise Plaintiff seeks. Second, the regulation is "necessary or essential" because there is no alternative means reasonably available to prison officials to protect against inmate solicitation schemes targeting the unsuspecting public. Indeed, Plaintiff has suggested no less restrictive form of regulation to protect the governmental interest at stake. Thus, the Florida regulations at issue satisfies both prongs of the Martinez standard.

Finally, weighing the security concerns against the fundamental interest asserted does not weigh in favor of Plaintiff because the undersigned finds no fundamental religious interest at issue. To find a free exercise violation in the prison context, a plaintiff must demonstrate that prison officials have employed a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which burdens a practice of his religion or prevents him from engaging in conduct or having a

religious experience which the faith mandates. O'Lone v. Estate of Shabazz, 482 U.S. 340, 350, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987). This interference must be more than an inconvenience; the burden must be substantial and significantly interfere with Plaintiff's practice of his religious beliefs. Cheffer v. Reno, 55 F.3d 1517, 1522 (11th Cir. 1995). "Substantial burden" has been defined as one that either compels the person to engage in conduct that his religion forbids or forbids him from engaging in conduct that his religion requires. *Id.* at 1522. This determination, *i.e*. whether one has been substantially burdened in practicing his religion, must be made prior to considering the reasonableness of a regulation. *Id.* This burden must be more than inconsequential. Levitan v. Ashcroft, 281 F.3d 1313 (D.C. Cir.2002). The religious practice allegedly burdened must be "some central tenet of a [person's] individual beliefs, Werner v. McCotter, 49 F.3d 1476, 1480 (10th Cir. 1995), or an "essential" or "fundamental" practice. Abdur-Rahman v. Michigan Dept. Of Corrections, 65 F.3d 489, 491-92 (6th Cir. 1995). In the context of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc(a)(1), "substantial burden" has been found when a regulation has "a tendency to coerce individuals into acting contrary to their religious beliefs," Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450 (1988), or when government puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136, 141 (1987). If Plaintiff fails to provide evidence that a particular practice is essential to his faith such that its absence would be a substantial burden to the exercise of his religion, then he has failed to show that its denial violated the First

Amendment. See Midrash Sephardi Inc. v. Town of Surfside, 366 F.3d 1214, 1350 (11th Cir. 2004) (Plaintiff bears burden of showing substantial burden on religious practice before invoking protections of RLUIPA).

Plaintiff has wholly failed to show that his being denied prayer partners is either a central tenet of the Southern Baptist faith or even a remote practice of the religion. Consequently, there is no fundamental interest to be protected or weighed against the security concerns of the prison.

In light of the foregoing, it is respectfully **RECOMMENDED** that under the standard set forth in Martinez, *supra*, Plaintiff's claim concerning the regulation of his outgoing mail soliciting prayer partners should be **DISMISSED.** Consequently, based upon the previous recommendations set forth in Document 45, Defendants' motion to dismiss (doc. 8) should be **GRANTED**, and this entire cause dismissed.

**IN CHAMBERS** at Gainesville, Florida, this 27th Day of February, 2006.

s/A Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**